THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ESTEBAN GARCIA, Defendant-Appellant.

First District (3rd Division)   No. 77-1088

Opinion filed September 27, 1978.

Ralph Ruebner and Kathy M. Morris, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Esteban Garcia, guilty of the murder of David Torres and guilty of the voluntary manslaughter of Carlos Rodriguez. The trial judge sentenced him to 14 to 25 years in the penitentiary for the murder and concurrently, one to 20 years for the manslaughter. The defendant appeals the judgment of murder, arguing that the evidence does not support the verdict, that the conviction should be reduced to voluntary manslaughter and the case remanded for resentencing. The defendant also contends that the case should be remanded for a new trial because the court erred in admitting portions of preliminary hearing testimony and in limiting the defendant's impeachment of it.

David Torres and his cousin, Carlos Rodriguez, were shot and killed by the defendant in the bar he owned and managed on the evening of December 7, 1975. Sandra Plotke, a friend of Torres who was in the bar that night, testified for the State. She said that at the time of the deaths there were only six people in the bar, although she later admitted that at a preliminary hearing she had numbered the crowd at 20. She recounted that earlier in the evening she saw the defendant and Rodriguez pushing each other around. Rodriguez had started the altercation with the defendant and Torres attempted to stop it. The disturbance began a second time. Garcia jumped up on the stage in the tavern. Rodriguez came after him. Garcia unbuckled his holster and shot Rodriguez. He turned and shot Torres. Torres, she said, had been standing next to a table as if "to go." Neither Torres nor Rodriguez, according to Plotke, had weapons. She never saw Torres fight with the defendant at all. She heard no one scream. On cross-examination, she clarified her testimony by saying that Torres made no move toward Garcia before Garcia shot him. She said only that Torres was standing "like he was going to make a move."

The State introduced into evidence the entire preliminary-hearing testimony of Susan Cantero over the defendant's objection. The Cantero version of the shooting in most respects corroborated Plotke's testimony. Before the trial, at a separate hearing on the defendant's motion to suppress this testimony, the State successfully argued that because Cantero could not be located and because the defendant had an opportunity and in fact, had taken advantage of that opportunity, to cross-examine Cantero at the preliminary hearing, her testimony could be introduced at trial. This was so even though the preliminary hearing

testimony was taken before the defendant had an opportunity to participate in discovery.

At the motion to suppress hearing, Investigator John Logalbo testified about his efforts to locate Cantero. The investigator said that two months before the expected trial date he started to look for Cantero. She was not listed in the phone book. One of her former neighbors suggested to him that Cantero moved to Florida. He did not record the name of this informant. He contacted the Florida Department of Motor Vehicles but they had no record of Cantero. The investigator also sought information about her from the Illinois Secretary of State, the Chicago Housing Authority, the Cook County Department of Corrections, the Department of Public Aid and the Cook County Bureau of Vital Statistics with no success. Logalbo said he visited her last known address several times in an effort to locate her and questioned many of the residents in the area without finding where she had gone. She left no forwarding address with the post office. According to Logalbo, another investigator had also tried to find her.

On cross-examination, Logalbo admitted he had not contacted any other public agency in Florida besides the Department of Motor Vehicles. He said he did not know if Cantero could even drive a car. He did not contact the Illinois Department of Corrections, the Board of Elections, the Department of Unemployment Compensation or the FBI. The judge ruled that the State had shown good faith and due diligence in its efforts to locate Cantero and that the cross-examination at the preliminary hearing by the defendant was adequate to admit Cantero's testimony at trial.

The defendant attempted to have a sentence from a statement Cantero gave the police admitted into evidence in which Cantero said that Rodriguez started the initial fight with him. The defendant asserted that this sentence impeached Cantero's preliminary hearing testimony. The judge ruled that the entire statement, not merely the sentence which the defendant characterized as impeaching, would have to be admitted. The defendant objected to this procedure and the statement was not read into evidence.

Katie Russell, the bartender in the tavern, testified that when the police arrived after the shootings she told them that a robbery had taken place. She said she told the police about a robbery only because the defendant told her one had occurred. During most of the disturbance, she said, she was frightened and hiding in the bathroom. She testified that she did not call out "it's a stickup" or any similar phrase indicating that a robbery was in progress. She did not see anyone with a gun that night besides Garcia and no one took any money from her.

Garcia's account of the shootings sharply contrasted with the one presented by the State. He said that sometime before the shootings

Rodriguez had instigated a fight with him and pushed him. Torres had intervened and pulled Rodriguez away. Although Garcia ordered the men to leave the bar, they did not. Sometime later Garcia said he heard a female voice he thought belonged to his bartender, Russell, announce that a robbery was in progress. Russell, according to Garcia, was behind the bar all night. Garcia pulled his gun from his holster and jumped up on the stage in the tavern. He shot Torres. Garcia said that Torres had a gun in his right hand and a bag in his left hand and was standing near the door. Garcia then turned and shot Rodriguez as he approached the stage. Rodriguez, said Garcia, had his hand in his shirt and had ordered Garcia to "freeze." Garcia said he fired all nine bullets in the gun.

The 20 to 25 patrons in the bar fled. Then, according to Garcia, another man who he had not seen before, entered the bar, grabbed the gun and bag from the fallen Torres and left. Garcia said he did not stop this man because his gun was empty. He did not use a second gun, hidden behind the bar, because it was not his gun, but belonged to a cousin. He added that he really did not remember that there was a second gun. Garcia told Russell that they had been robbed and told her to call the police. Russell was crying so Garcia said he called the police himself. When the police arrived, Garcia told them how much money had been taken and that the men he had shot were robbers.

A friend of Garcia's, Tony Martinez, testified for Garcia. Martinez said he had been in the bar that night with about 20 to 25 other people. He said he heard the female voice yell that there was a robbery and he saw a man waving a gun. However, he left the area right after the shootings and never told the police about the incident.

The defendant argues that because the shootings arose out of the same state of mind, the motivation for the shooting of Torres cannot be legally differentiated beyond a reasonable doubt from that which caused him to shoot Rodriguez, citing *People v. Bailey* (1975), 27 Ill. App. 3d 128, 326 N.E.2d 550. Though the defendant admits the verdicts mean that the jury disbelieved his robbery-self-defense story, he contends that the statement of the State's witness, Plotke, that Torres, was "like going to go" indicates that Torres was going to go after the defendant, making Garcia believe that Torres was part of the same aggression that caused him to shoot Rodriguez.

■■ Voluntary manslaughter requires a showing that a defendant acted under either a sudden and intense passion resulting from serious provocation or under an unreasonable belief that he needed to defend or protect himself or others from serious bodily harm or a forcible felony. (Ill. Rev. Stat. 1977, ch. 38, par. 9—2.) The jury heard testimony that Rodriguez was twice the aggressor in altercations with the defendant; that evidence can support a verdict of voluntary manslaughter. However,

there is no similar evidence of aggression by Torres and the jury rejected Garcia's explanation for his action in shooting Torres. There is no support in the record, therefore, for the defendant's argument for the reduction of the murder conviction to voluntary manslaughter.

The defendant's depiction of Plotke's testimony concerning Torres' action before his death is without merit. Plotke's testimony is clear that David Torres made no overt movement toward Garcia after Garcia began firing at Rodriguez. The defendant, on cross-examination, suggested to Plotke that her direct testimony indicated that "David was moving toward the stage" at the time of his death. Plotke denied such an implication, saying, "No. David was going to. He was standing by the table like he was going to make a move toward the stage. He was going to go." The jury was entitled to draw the conclusion that Torres committed no act toward the defendant which could be interpreted as a provocation or a threat or an attempted robbery.

The defendant's reliance on *Bailey* is misplaced. In *Bailey*, the court held that when a defendant initially acts in self-defense in firing a gun, his continued shooting of the gun should not be characterized as unnecessary if the defendant did not have sufficient time to realize he was no longer in danger. (27 Ill. App. 3d 128, 136, 326 N.E.2d 550, 556.) In that case, the court specifically found that when the defendant first fired at the two brothers who were threatening him, he was justified in shooting. Here, there was no showing of concerted action and neither shooting was found to be justified.

The defendant argues that the preliminary hearing testimony of Cantero was improperly admitted into evidence. He asserts that before preliminary hearing testimony of an unavailable witness can be admitted at trial, it must be shown that the State acted in good faith and with due diligence to locate the witness and that the defendant had an adequate opportunity to cross-examine the witness at the preliminary hearing. Here, the defendant states, because the preliminary hearing occurred before he was permitted discovery, his cross-examination of Cantero could not be considered adequate. He points out several instances in which Cantero's testimony differs from the testimony of other witnesses. The defendant suggests that since cross-examination of Cantero on these differences was critical her preliminary hearing testimony should not have been admitted at trial.

*People v. Horton* (1976), 65 Ill. ?d 413, 417, 358 N.E.2d 1121, 1124, states that although adequate opportunity to cross-examine at a preliminary hearing must be evaluated in light of discovery and the type of evidence introduced at the preliminary hearing, a defendant would not be held to have been denied adequate cross-examination if further cross-examination would be of no benefit to him. There has been no showing

here that the defendant's cross-examination of Cantero at the preliminary hearing would have been enhanced by material made available to him through discovery. A review of the Cantero testimony indicates that the defendant extensively questioned her about the events in the tavern that night. In his appeal, the defendant points to no specific evidence discovered after the preliminary hearing which would affect Cantero's testimony.

The defendant states that the State failed to show due diligence and a good faith effort to procure Cantero's attendance at trial. As noted in *People v. Burton* (1972), 6 Ill. App. 3d 879, 885, 286 N.E.2d 792, 796, "[t]he question of what actions constitute reasonable diligence and a good faith effort to locate and secure the presence in court of a witness depends on the facts and circumstances of each particular case." There, a State's investigator's inquiry to election and post office officials, his visit to the witness' last known address and interviews with people living nearby were held sufficient. The efforts to locate Cantero were much more extensive. Diligence and good faith had been shown and Cantero's testimony was properly admitted.

The defendant next contends that a sentence of a statement Cantero gave the police should have been admitted to impeach her preliminary hearing testimony. The sentence dealt with the fact that Rodriguez initiated the altercation with him. It is merely cumulative evidence, neither contradictory of Cantero's preliminary hearing testimony nor inconsistent with any other trial testimony. Further, the defendant fails to show how inclusion of it into the record could in any way disturb the verdicts rendered. It was of little value to the defendant's posture during the trial and of negligible import to his arguments on appeal.

We, therefore, affirm the verdicts of murder and voluntary manslaughter rendered in the circuit court of Cook County.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.