THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD B. ALDRIDGE, Defendant-Appellant.

First District (1st Division)    No. 79-54

Opinion filed October 13, 1981.

Sheila Murphy, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant was found guilty by a jury of the crimes of rape, armed robbery, aggravated kidnapping and burglary. The trial court sentenced him to 28 years in custody for the crimes of rape and armed robbery, sentences to run concurrently. Defendant now appeals.

On appeal, defendant argues that (1) the trial court erred in denying his motion for substitution of judges; (2) the trial court erred in not allowing defense counsel to introduce into evidence and cross-examine complainant about a composite sketch of the offender prepared by police from complainant's description; and (3) the lineup identification and fingerprint comparison should have been suppressed.

We affirm.

The first two errors alleged by defendant on appeal are procedural. These two are also the most significant issues. Therefore, a detailed recitation of the facts is unnecessary. An abbreviated version follows.

On July 16, 1977, at 12:30 a.m., complainant left work and drove to her apartment in Evanston, Illinois. She testified that as she walked into the vestibule of her apartment building, defendant grabbed her from behind, choked her and threatened to kill her. This was the beginning of an ordeal which lasted approximately five hours.

In the course of the incident, complainant was subjected to various indignities and violations of her person. She was forced to undress, beaten, tied with a dog leash and raped. After the incident, complainant telephoned her parents and then reported the incident to the police. She was treated later that evening at the Evanston Hospital emergency room. She was examined by a doctor who testified that complainant sustained abrasions on her face and arms and that motile sperm was found in complainant's vagina.

A reported rape unrelated to complainant's rape eventually led to defendant's arrest. On August 9, three weeks after complainant was raped, Officer Al Szoldatits was on patrol with his partner on the south side of Chicago. He spotted an automobile parked in an alley near 87th Street and Michigan Avenue. Looking inside the car, he saw a man lying down and a young blonde woman who was naked from the waist up. The man was defendant. Szoldatits asked whether there was anything wrong, and the two said that there was no problem. He took both of their names and addresses. Defendant stated that his name was Philip Rucker.

Approximately one hour later, the woman who had been in the car reported to the Evanston police that she had been abducted, raped and robbed. She stated that she had been stopped by the Chicago police earlier that evening. The Evanston police then contacted the Chicago police and obtained defendant's name and address. An Evanston detective and two Chicago police officers went to defendant's home and conducted a search. Several items belonging to the woman were recovered. Defendant was arrested later that evening.

Primarily, the incriminating evidence against defendant consisted of a lineup identification of defendant by complainant and a fingerprint of defendant's found in her apartment. Defendant's defense theory was that he had always had a beard and therefore could not have been the perpetrator of the crime. Both at the time of his arrest and at the lineup, defendant had a short beard. The day after complainant was raped, an Evanston police officer and complainant assembled a composite sketch of the rapist. The composite indicated that the rapist had been clean-shaven. At trial, complainant again described the man who had raped her as clean-shaven. Defendant called five witnesses at trial, all of whom were friends and relatives, who testified that defendant had had a beard on the date when complainant was raped.

An Evanston police officer dusted complainant's apartment for fingerprints. He discovered latent fingerprints on an ashtray in complainant's apartment. A fingerprint examiner compared defendant's fingerprints to those which had been found on the ashtray. One of the latent prints taken from the ashtray was identical to defendant's right index fingerprint. The examiner explained at trial that there were 14 points of comparison between the prints, in excess of the number necessary for a positive identification.

The jury found defendant guilty of all charges.

First, defendant argues that the trial court erred in denying his motion for substitution of judges. The statutory provision governing motions for substitution of judges provides that a defendant may move in writing for a substitution of a particular judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. (Ill.

Rev. Stat. 1979, ch. 38, par. 114—5(a).) The motion must be made within 10 days after the case has been placed on the trial judge's call and before the trial judge has ruled on any substantive issues. (Ill. Rev. Stat. 1979, ch. 38, par. 114—5(a).) If these requirements are met, the defendant has an absolute right to have the case transferred to another judge. In the present case, the trial judge had not ruled on any substantive issues before defendant moved for substitution. The only question with which we are concerned is whether defendant's motion was timely filed.

In 1978, when defendant's case went to trial, the Second Municipal District of the circuit court of Cook County had one felony courtroom. Judges were assigned to the felony courtroom on a rotating basis. Each judge sat in the felony courtroom for one calendar month.

On April 15, 1978, defendant appeared before Judge Stein, who set the case for May 1, 1978. On May 1, 1978, the case was called before Judge Nicholas Pomaro, who was the trial judge assigned to the felony trial courtroom for the month of May. It was on this day that defense counsel first became aware that Pomaro would be the trial judge. On May 2, 1978, as the first order of business, defense counsel filed a motion for substitution of judges. Judge Pomaro denied the motion on the ground that the case had been on his call for more than 10 days as of May 2. He noted that his assignment to the courtroom had been published in the Daily Law Bulletin the previous month.

Recent cases have liberally construed section 114—5(a) so as to permit rather than deny a substitution, holding that a motion for substitution of judges is timely filed if it is filed within 10 days of the date defendant could be "charged with knowledge" of the assignment of the case to the trial judge. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 563, 400 N.E.2d 436; *People v. Oatis* (1979), 69 Ill. App. 3d 736, 741, 387 N.E.2d 1052; *People v. Flowers* (1977), 47 Ill. App. 3d 809, 811, 365 N.E.2d 506.) A liberal construction of the statute, however, does not necessitate a finding that such a motion was timely filed in all cases.

■■ The basis of the trial judge's ruling was that his assignment to the felony courtroom had been published in the Daily Law Bulletin the previous month. We do not believe that simply because a trial calendar is published in a law bulletin, a defendant can be charged with knowledge of an assignment to a particular judge's trial call. In the present case, however, one additional factor persuades us that the trial court's ruling was correct. Defendant's attorney had represented defendant in at least eight hearings in the Second Municipal District over a period of six months. In October 1977, defendant twice appeared before Judge Stein; in November 1977, defendant twice appeared before Judge Pomaro; in December 1977, he appeared before Judge Breen; in January 1978, he appeared before Judge Crowe; in February 1978, he appeared before

Judge Fiala; in March 1978, he appeared before Judge Breen; in April 1978, he again appeared before Judge Stein. It is neither unreasonable nor manifestly unfair to charge defendant with knowledge of local courtroom assignment procedures when his attorney represented him continuously for this amount of time. We find, therefore, that defendant failed to make his motion within the statutorily required time period.

Second, defendant argues that the trial court erred in not allowing defense counsel to introduce into evidence and cross-examine complainant about a photocopy of a composite sketch of the offender. With complainant's assistance, an Evanston police technician used an identi-kit to produce a likeness of the offender. An identi-kit consists of several transparent overlays. On each overlay is a printed variation of a facial feature. The eyewitness selects the variation of each feature which most closely resembles that of the offender. The overlays are assembled, and a final composite is produced on a photo-copying machine.

Defense counsel attempted to impeach complainant with the final composite by showing that she had described the offender as clean-shaven. The trial court ruled that the final composite constituted impermissible hearsay evidence. In so ruling, the trial court relied on two appellate cases which recently were overruled by the Illinois Supreme Court. (See *People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848; *People v. Jones* (1975), 34 Ill. App. 3d 103, 339 N.E.2d 485.) In *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, the Illinois Supreme Court held that a composite sketch prepared from an identi-kit does not constitute impermissible hearsay. (81 Ill. 2d 571, 580.) Thus, the trial court's rationale for excluding the evidence is no longer valid.

Nevertheless, we do not believe that it was reversible error to exclude the final composite from evidence since the evidence was merely cumulative. The description of the attacker initially given by complainant to the police officer was entirely consistent with the description she gave during both direct and cross-examination. The trier of fact was aware that complainant consistently stated that she had been raped by a clean-shaven man. The jury also was aware that at the lineup and in court, complainant identified defendant as her attacker even though he wore a short beard on both occasions.

■■ A trial court has the power to exclude evidence which is cumulative. (*People v. Leonard* (1980), 80 Ill. App. 3d 741, 400 N.E.2d 568; *People v. Garcia* (1978), 65 Ill. App. 3d 13, 382 N.E.2d 316; *People v. Godbout* (1976), 42 Ill. App. 3d 1001, 356 N.E.2d 865.) In light of *Rogers*, the trial court's exclusion of the evidence on the ground that it was hearsay was incorrect. The evidence, however, was merely cumulative and not impeaching, and we therefore hold that the exclusion of the evidence was not error.

Defendant argues that some of the evidence against him was produced by an unlawful investigative stop followed by an unlawful arrest. The lineup identification and fingerprints, he argues were the fruit of the illegal arrest and, therefore, should have been suppressed. In our judgment, neither the investigative stop nor defendant's subsequent arrest was unlawful.

An investigative stop is justified if there are specific and articulable facts which, taken together with rational inferences from those facts, make the intrusion reasonable. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) In the present case, a police officer patrolling the area noticed movement in a car parked in an alley. Clearly, he was justified in looking inside the car. He observed defendant lying down and a woman naked from the waist up. Given the fact that it was 3 a.m., the car was parked in a dark alley, and one of the persons was undressed from the waist up, it was not improper for the officer to demand the parties to give their names and addresses and an explanation of their actions. See Ill. Rev. Stat. 1979, ch. 38, par. 107—14.

Defendant further argues that his arrest was unlawful because it was carried out by Evanston police officers within the city of Chicago. Illinois case law and statutory law provide that a police officer may enter another municipality to make an arrest for a crime committed within his own jurisdiction. (See *People v. Durham* (1979), 71 Ill. App. 3d 725, 390 N.E.2d 517; Ill. Rev. Stat. 1979, ch. 38, par. 107—5(c).) The woman complained that she had been abducted in Evanston, then taken to Chicago and raped. Evanston police officers, therefore, had the right to arrest defendant in Chicago a few hours later.

Since we believe that neither the investigative stop nor defendant's arrest was improper, there is no reason to consider whether the lineup identification and fingerprint comparison were the fruits of any unlawful acts.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.