THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LLOYD FRANCIS GOFF, Defendant-Appellant.

Fifth District   No. 5—82—0667

Opinion filed September 19, 1985.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert W. Matoush, State's Attorney, of Salem (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Lloyd Francis Goff, was convicted by a jury of armed robbery, and was sentenced to 18 years in prison. On appeal, defendant contends that he was deprived of a fair trial when the court gave a non-IPI jury instruction and accordingly his conviction must be reversed and remanded for a new trial. Errors assigned by defendant in his supplemental *pro se* brief include: (1) that the court erred in failing to quash his arrest warrant and suppress evidence seized pursuant to that arrest warrant, and (2) that the trial court erred in denying defendant's motion for a change of venue. For the reasons stated below, we affirm.

The record reveals that the defendant was charged by information in Marion County with the offense of armed robbery of Rebecca Smith on December 23, 1981. At the jury trial, the first witness, Ida Boyd, testified that on December 23, 1981, she was employed at D.J.'s Party Liquor Store in Salem, and was working the evening shift from 4 p.m. to midnight. About 11:40 p.m., while Boyd was stocking the shelves, someone entered the store, following which she heard a male voice in conversation with the other clerk, Becky Smith. No other customers were in the store at that time, although business had been brisk that night. Boyd heard Smith summon her; she then walked to the counter where the cash register was located. Smith told Boyd that the man was robbing the store. At this time Boyd noticed that the man was carrying a gun. The gun was similar to People's exhibit No. 1.

The man remained in the store for approximately five minutes.

During this time Boyd was no more than 10 feet from the man. The interior of the store was illuminated at this time by fluorescent lights, one of which was located directly over the counter area. Boyd described the robber as a white male, age 35 to 40, who stood 5 feet 10 inches or 5 feet 11 inches tall and weighed about 160 pounds. He had "modern cut *** wind blown" medium brown short hair and no beard or mustache. He was wearing a long sleeve tan plaid flannel shirt and no hat. Boyd identified the defendant in court as this man.

On cross-examination Boyd stated that she had been approached by an investigator for the defense, and that she had refused to speak with him about the offense. She believed the defense had access to the statement she had given to the police, but acknowledged that her testimony at trial contained much information that was not included in her earlier statements.

Becky Smith also testified about the armed robbery. When the man announced the robbery, he was standing about 3 feet from her. He was armed with a gun that looked like People's exhibit No. 1. Smith had never seen the robber before that night. She described him as a white male, who was 35 to 40 years old, 5 feet 8 inches or 5 feet 9 inches tall and 150 pounds. He had very neat light brown short hair, no beard or mustache, and was wearing faded blue jeans and a short sleeve black, green and gray plaid shirt. Smith identified the defendant in court as the person who robbed her.

Smith testified that she also had been contacted by the defense investigator and had refused to speak with him. She admitted that she had received a telephone call from a secretary for the State's Attorney and that the secretary had identified the defense investigator by name and told her that she did not have to speak with anyone about the crime.

Sergeant Steve Duff of the Kentucky State Police testified that he arrested the defendant on March 19, 1982, and removed from one of the defendant's pockets various identification papers bearing the name Richard Allen Scott. The defendant had a beard and mustache at the time of his arrest. Sergeant Harold L. Howard of the Kentucky State Police assisted Duff in arresting the defendant. Howard then went to the home of Junior McQueen, where McQueen gave him a gun (People's exhibit No. 1) which McQueen said was the defendant's.

Junior McQueen testified that about two weeks before his arrest the defendant, whom McQueen knew as "Dick," had rented a house located about 100 feet from McQueen's residence. On the morning of March 19, before his arrest, the defendant was sitting on the porch at McQueen's home cleaning a gun. McQueen identified People's exhibit

No. 1 as the weapon the defendant was cleaning. McQueen had never seen the defendant with a gun before that morning. The defendant asked McQueen for permission to leave the gun in McQueen's house; McQueen refused this request. The defendant returned to, and entered McQueen's home later that day. McQueen did not see the gun again on March 19 until the police arrived at his residence, at which time he consented to and assisted in their search of his home. The officers found nothing and commenced searching outside the home for the weapon. Later McQueen found the gun in a box of dirty clothes in his closet and turned it over to the police.

Larry Norbeck, a Marion County Correctional Officer, testified that the defendant, upon being booked into the Marion County Jail on March 28, 1982, told Norbeck that he was 38 years old, 5 feet 11 inches tall and weighed 170 pounds. Marion County Sheriff Charles Sanders testified that, one week before trial, the defendant's height was measured at 5 feet 10¼ inches and his weight at 156 pounds.

A number of witnesses testified for the defendant. Glenn Goff, the defendant's brother, testified that the defendant normally weighed about 180 pounds, and that the defendant appeared to weigh that amount when Glenn saw him on Thanksgiving Day, 1981. Glenn had never known the defendant to have short hair.

Another of the defendant's brothers, Ray Goff, testified that the defendant normally weighed 175 pounds and always wore his hair long. Roy had been in D.J.'s Party Liquor Store with the defendant six or eight times, most recently in November 1981.

Tammy Wimberly testified that she cut the defendant's hair about a week before Christmas, 1981. On cross-examination she admitted that she could not pinpoint the date of the defendant's haircut any better than to say it occurred in December 1981, before Christmas. After she was finished cutting, the defendant's hair appeared similar to that depicted in the picture taken of him on November 27, 1981 (defendant's exhibit K).

Harold Fickes, a friend of the defendant, related that on December 24, 1981, the defendant appeared to weigh 160 to 165 pounds and, though he was not sporting a beard or mustache, he was not clean-shaven; the defendant had "[p]robably a couple of [sic] three days' growth." The defendant's hair on December 24 was long enough to cover the upper half of his ears. On cross-examination, Fickes acknowledged that he had been convicted of a felony, aggravated battery in 1978.

Richard L. Garretson, M.D., testified that he examined the defendant on September 1, 1982. That examination revealed that

defendant stood 5 feet 11 inches tall, weighed 157 pounds and had a moderate case of diabetes mellitus. According to Garretson, steady weight loss is often associated with diabetes.

The defendant testified as the final witness for the defense. He denied that he committed the armed robbery of Becky Smith and re-called that on December 23, 1981, he was in Decatur, where he was living at the time. He admitted not only being familiar with D.J.'s Party Liquor Store, but having been in the establishment a number of times when he lived in Salem. The defendant moved from Decatur to Champaign in January 1982. While in Champaign, he was only able to obtain occasional work, so in early March 1982, he moved to Ken-tucky to seek work in the coal fields. Prior to his departure, he ob-tained the various false identification cards in the name of Richard Allen Scott because he believed his true identity, with felony convic-tions on his record, would hinder him in his efforts to find employ-ment. The defendant weighed 170 pounds when he assumed his new identity.

Though the defendant trusted McQueen, he never told McQueen his real name. The defendant claimed that McQueen was lying when he testified about seeing the defendant with a gun, because the defendant never had a gun.

The jury found the defendant guilty of armed robbery, and defend-ant was subsequently sentenced to 18 years in the Department of Corrections.

■ Defendant's first contention on appeal is that he should be granted a new trial because a jury instruction submitted by the State and given to the jury was unnecessary, did not completely state the law, was not impartial or free from argument, was misleading, and conflicted with other instructions which were given to the jury.

During the trial in the case at bar, the defendant's attorney elic-ited from the State's two major witnesses, testimony that they refused to grant interviews to an investigator for the defendant's at-torney. At the conference on jury instructions, the State submitted a non-IPI instruction designed to inform the jury of the law concerning a witness' refusal to discuss the case with opposing counsel prior to trial. The instruction (People's instruction No. 10), with which the trial court instructed the jury, read as follows:

> "Any witness in a criminal case is under no obligation to grant an interview to defendant or to counsel for defendant, or dis-cuss with such defendant or defendant's counsel, what the tes-timony would be, unless the witness chooses to do so."

In submitting the instruction, the People relied upon *People v. Mitch-*

*ell* (1958), 16 Ill. App. 2d 189, 193, 147 N.E.2d 883, 885, and *People v. Duncan* (1913), 261 Ill. 339, 103 N.E. 1043.

At trial, the defendant objected to giving the instruction solely because the instruction referred to a witness' right to refuse to speak with counsel for the defendant. In fact, counsel for the defendant stated that he was not objecting to instructing the jury that a witness need not speak with counsel for the opposing party, but only that he opposed the manner in which the instruction was worded, since it only addressed the situation in which the State's witnesses refused to grant interviews to the defendant's investigator. The trial judge pointed out that there was no evidence that the defense witnesses had refused to discuss the case with the State and gave the instruction over the defendant's objection.

The State claims that this issue has been waived by the defendant for two reasons. First, the State asserts that the defendant is attempting to take issue with People's instruction No. 10 on grounds not presented below. Second, the State asserts that the issue is waived since the defendant did not submit an alternative instruction, but only posed an objection to the instruction offered by the State. From our review of the record, we find that although defense counsel's remarks were brief, it is nevertheless clear from those comments that the gist of his objection included many of the grounds which the defendant now urges on appeal. Secondly, although the defendant did not tender an alternative instruction, he did object to the instruction at issue. It was not necessary, as the State intimates, that defendant must also submit a written alternative instruction.

The Illinois Supreme Court has provided by rule that "[w]henever IPI—Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial and free from argument." (87 Ill. 2d R. 451(a).) Defendant contends that the instruction at issue fails to comply with Rule 451 in that it is neither impartial nor free from argument, it is misleading, and it conflicts with other instructions which were given to the jury. Defendant contends further that although the instruction ostensibly addresses a witness' right to refuse to speak with the defendant or his attorney, it also touches on a more basic matter, the credibility of a witness who refuses to discuss his testimony with the accused or defense counsel. Citing *People v. VanZile* (1977), 48 Ill. App. 3d 972, 363 N.E.2d 429, defendant notes that evidence that witnesses had refused to speak with opposing counsel

"is very damaging indeed. It attacks severely their credibility,

for, if one is telling the truth, why not tell such truth to anybody who asks? To our view, there is a reasonable inference to be drawn from a refusal to discuss a matter which would lead reasonable men to wonder if what the witness has testified to was indeed the truth." (48 Ill. App. 3d 972, 977, 363 N.E.2d 429, 433.)

Defendant maintains that, although the instruction does not misstate the law, it is not a complete statement of the law and it does not say enough to be acceptable under Supreme Court Rule 451(a). Defendant contends the instruction should state that a witness has the right to refuse to speak not only with the defendant or his counsel, but with either party, that party's attorney or that party's investigator. Defendant argues further that the instruction misled the jury on the law and improperly favored the prosecution over the defense in that the jury could have concluded that neither Boyd nor Smith acted improperly in refusing to talk with the defense investigator, and that no inferences detrimental to the State's case could be drawn from their decision not to speak.

■ From our review of the record, we find that under the circumstances of the instant case, the trial court properly instructed the jury with People's instruction No. 10. Two of the witnesses for the State declined to grant pretrial interviews to the investigator for the defendant's attorney. No evidence was presented that any of the defendant's witnesses refused to discuss the case with representatives of the State prior to trial. During cross-examination of the witnesses for the State, the defendant's attorney dwelt upon those witnesses' refusal to speak with the investigator prior to trial. We note that a modified version of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.10 (2d ed. 1981) was given to the jury. That instruction, as modified, read: "An attorney or his investigator has the right to interview a witness for the purpose of learning the testimony the witness will give." We find that under the circumstances the jury was entitled to know that those witnesses were not obligated to grant such an interview. Since the only evidence in the record concerning a witness' refusal to speak with representatives of the opposing party related to the State's witness, we decline to find that the trial court erred in instructing the jury with People's instruction No. 10 as written. The defendant has not cited any case holding that such an instruction is erroneous, and our research has failed to uncover any cases precisely on point. The defendant concedes however that People's instruction No. 10 correctly states the law. The jury was instructed that it could consider the testimony in light of its own observations and experi-

ences (IPI Criminal No. 1.01) and could weigh the witnesses' credibility by considering their interest, bias or prejudice (IPI Criminal No. 1.02). Furthermore, they were instructed that an attorney or his investigator has the right to interview a witness for the purpose of learning the testimony the witness will give (IPI Criminal No. 3.10 (modified)). Had the trial court instructed the jury only with the general instructions concerning use of their own observations and experiences in consideration of the witnesses' interest, bias or prejudice, the jury may have been left with the impression intended by the defendant that the witnesses who refused to talk with his investigator had acted improperly. It is still the law, though, that a prosecution witness need not grant an interview to the defendant's attorney. (*People v. Peter* (1973), 55 Ill. 2d 443, 451, 303 N.E.2d 398, 403-04.) Moreover, the jury was instructed that the defendant's counsel and the investigator had a right to interview the witnesses and that the jury could weigh the witnesses' credibility by considering any bias or interest they may have. We find that People's instruction No. 10 did not conflict with those instructions but merely stated the law pertaining to the evidence presented in the case at bar and, accordingly, it was proper for the trial judge to instruct the jury that it was not improper for a witness to refuse an interview with counsel for the defendant and his investigator.

Additionally, defendant claims that the instruction in dispute precluded an argument to the jury that the witnesses' refusal to discuss the case prior to trial demonstrated their bias in favor of the State. However, we note that the defendant's attorney in fact did argue that point to the jury, suggesting that the People's witnesses had something to hide.

■ Finally, we note that, even assuming that the trial court erred in instructing the jury with People's instruction No. 10, the error was harmless beyond a reasonable doubt. Even though error may have been committed in giving or refusing an instruction, it will not always require reversal when evidence of defendant's guilt is so clear and convincing that the jury could not have reasonably found him not guilty. (*People v. Ward* (1965), 32 Ill. 2d 253, 256, 204 N.E.2d 741, 743, *cert. denied* (1966), 384 U.S. 1022, 16 L. Ed. 2d 1026, 86 S. Ct. 1947; *People v. Barnes* (1983), 117 Ill. App. 3d 965, 975, 453 N.E.2d 1371, 1380.) When examining instructions in a case, no single instruction is to be judged in artificial isolation. It must be viewed in the context of the entire charge. (*People v. Housby* (1981), 84 Ill. 2d 415, 433-34, 420 N.E.2d 150, 160.) When the language of an instruction is inaccurate and, standing alone, might have misled the jury, other in-

structions in the series may explain it, remove the error or render it harmless. If the series of instructions, construed as a whole, fully and properly informs the jury of the law applicable to the case, the jury is properly instructed. *People v. Williams* (1980), 80 Ill. App. 3d 963, 970, 400 N.E.2d 532, 537.

In the case at bar, after reviewing the jury instructions as a whole on the issue of credibility of the witnesses, we conclude that any error in giving People's instruction No. 10 was harmless beyond a reasonable doubt. Both witnesses to the armed robbery positively identified the defendant in court as the person who had committed the armed robbery. Both testified that the lighting in the store was good and that they were very near the offender. One of the witnesses testified that she focused upon the armed robber's face and that as long as she did not look at the gun, she was not afraid, so she trained her attention on the robber's face. Additionally, in cross-examining the witnesses, the defendant's attorney made it clear to the jury that both the witnesses wanted to assist in catching the armed robber and in convicting him. Thus, their bias in favor of the State was made clear to the jury. (See *People v. Brown* (1984), 122 Ill. App. 3d 452, 457, 461 N.E.2d 71, 76.) Also, the defendant's alibi is weak. The only support for his testimony that he was "bar-hopping" on the evening of the offense is a testimony of a friend who testified that on Christmas Eve and one other evening of the week prior to Christmas, and perhaps even longer than the week before Christmas, he and the defendant were "bar-hopping" in Decatur. That witness was impeached with his admission that he had been convicted of aggravated battery in 1978.

We conclude that defendant's guilt is so clear and convincing that a jury could reasonably not have acquitted him and accordingly any error in giving People's instruction No. 10 was harmless and does not require a reversal of defendant's conviction.

■ In a *pro se* supplemental brief, defendant raises two additional issues on appeal. Defendant first claims that the trial court should have quashed his arrest because the arrest warrant was invalid and that the court should have suppressed false identification cards and a gun which were seized after the defendant's arrest. The record shows that the defendant was charged with armed robbery in an information that was filed December 28, 1981. An arrest warrant issued pursuant to that information. Subsequently, based upon a tip from an informant who was identified at trial as the defendant's girlfriend, police officers in Kentucky arrested the defendant on the basis of the outstanding arrest warrant. The informant had told the police where

the defendant lived and that he was wanted for an offense in Illinois. She also told them that defendant had been in possession of a handgun.

At the trial, false identification cards seized from the defendant's person upon his arrest were introduced and received into evidence for the purpose of demonstrating the defendant's consciousness of guilt. Prior to trial, the trial court ruled that the identification of the defendant by means of a photographic lineup would be suppressed because the photographs of the defendant and the photographs of others were not sufficiently similar.

Upon the filing of an information, an arrest warrant issues. (Ill. Rev. Stat. 1983, ch. 38, par. 111—2(d).) The defendant may not challenge the issuing judge's conclusion that probable cause existed to issue the warrant unless he makes a substantial preliminary showing that the finding of probable cause was based upon a false statement made knowingly and intentionally or with reckless disregard to the truth. (*Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) If the defendant is able to make such a showing, supported by affidavits or other offer of proof, then he is entitled to a hearing. 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.

In the case at bar, the defendant made no showing that probable cause for the issuance of the arrest warrant was based on a false statement made knowingly and intentionally or with reckless disregard for the truth. The basis for the defendant's contention that there was no probable cause to issue the warrant was the subsequent ruling by the trial court suppressing evidence of the photographic lineup. As the trial judge pointed out, the judge who suppressed the photographic lineup evidence did not find that the officers who presented the photographs to the witnesses had intentionally acted improperly. The trial court suppressed the photographic evidence on the grounds that the photographs presented to the witnesses were too dissimilar in appearance. However, the fact that the witnesses identified the defendant from the photograph provided the investigating officers with probable cause to believe that the defendant was the person who committed the armed robbery. That the trial court later determined that the photographic lineup was too suggestive does not demonstrate that the officers had a reckless disregard for the truth when they submitted the photographic lineup to the witnesses. Therefore, the defendant's contention that the officers had a reckless disregard for the truth solely because the photographic lineup was later suppressed is without merit. Accordingly, we find that the trial court properly de-

nied the defendant's motion to quash his arrest and suppress the evidence seized without a hearing. *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.

■ The defendant also claims in his *pro se* supplemental brief that the trial court erred in denying his motion for a change of venue based on four news accounts which appeared in the county of the defendant's trial. The facts below reveal that prior to trial in the case at bar, the defendant filed a motion for change of venue. At the hearing on the motion, the defendant argued that news reports of a prior ruling suppressing evidence of the photographic lineup prejudiced him because jurors who disagreed with the exclusionary rule might have become aware of the order excluding the photographic identification and would want to convict the defendant. The trial judge pointed out that none of the articles contended that defendant was guilty of the offense and stated that *voir dire* could eliminate any prospective jurors from the jury who may have formed an opinion based upon the articles. During *voir dire*, each juror ultimately selected was asked whether he or she had heard anything of the offense. Six of the jurors had heard nothing concerning the case. Of the remaining six, two had read or heard something about the case only at the time of the offense. All six of those who had heard something about the offense stated that they had formed no opinions concerning the defendant's guilt, could lay aside any information they had heard and could decide the case solely upon the evidence presented in court. Both the defendant's attorney and the State's attorney were permitted to question the prospective jurors after the trial judge had first done so. Additionally, defendant did not exhaust his peremptory challenges.

The burden of showing that a juror has formed an opinion which raises a presumption of his partiality in a case rests upon the party challenging the juror. (*People v. Cole* (1973), 54 Ill. 2d 401, 413, 298 N.E.2d 705, 712.) Unless that party can show the actual existence of such an opinion in the mind of juror, the juror need not necessarily be set aside. (54 Ill. 2d 401, 413, 298 N.E.2d 705, 712.) The jurors need not be totally ignorant of the facts and issues involved in the case; it is sufficient if the juror can lay aside his impression and render a verdict based upon the evidence presented. *People v. Black* (1972), 52 Ill. 2d 544, 557, 288 N.E.2d 376, 384.

■ The determination of whether or not the prospective juror possesses the state of mind which will enable him to give the accused a fair and impartial trial rests within the sound discretion of the trial judge, and his determination will not be set aside unless it is against the manifest weight of the evidence. (*People v. Cole* (1973), 54 Ill. 2d

401, 414, 298 N.E.2d 705, 712.) In the case at bar, six of the jurors had never heard of the case prior to their appearing in court for the *voir dire*. The remaining six jurors stated that they had formed no opinion of the defendant's guilt and could decide the case based upon the evidence in court, putting aside anything that they may have read in the newspapers or heard on the radio. Two of those jurors stated that they had heard about the case only at the time of the offense, and two others had not listened closely when they had heard reports of the case when they heard it on the radio. From our review of the record, we find that the trial court's denial of defendant's motion for a change of venue was proper and not against the manifest weight of the evidence.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

JONES, P.J., and KASSERMAN, J., concur.